# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| SALLY CZARNECKI, MARY SCHNEIDER, ERIC KONINGS and RAFAEL CAJIGAS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> vs. <br><br> ALLIANCE ONE RECEIVABLES MANAGEMENT, INC., <br><br> Defendant. | Case No.: 18-cv-83 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Sally Czarnecki is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Mary Schneider is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Eric Konings is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Plaintiff Rafael Cajigas is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him or her a debt allegedly incurred for personal, family or household purposes.

8. Defendant Alliance One Receivables Management, Inc. ("Alliance One") is a debt collection agency with its principal offices located at 4850 E Street Road, Suite 300, Trevose, PA 19053.

9. Alliance One is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. Alliance One is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Alliance One is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Facts relating to Plaintiff Czarnecki*

11. On or about February 6, 2017, Alliance One mailed a debt collection letter to Plaintiff Czarnecki regarding an alleged debt, allegedly owed to "CAPITAL ONE BANK - USA, N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt that Alliance One was attempting to collect was an alleged credit card account, used only for personal, family or household purposes.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Czarnecki inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter used by Alliance One to attempt to collect alleged debts.

2

15. Upon information and belief, Exhibit A is the first written communication that Alliance One sent to Czarnecki regarding the alleged debt to which Exhibit A refers.

16. Exhibit A contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

17. The above language in Exhibit A is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

18. Exhibit A also contains the following settlement offer:

> The amount of your debt is $3,794.65. At this time, we would like to offer to resolve your account for 30% off the balance! That's a total reduced payment amount of $2656.26. Upon receipt and clearance of your payment, we will immediately cease collection activity and will notify our client that you have paid your account.
>
> Our goal is to offer payment solutions that fit your needs. If you can't pay the reduced amount within 40 days, please call 800-279-3480 to discuss other options including a variety of payment plans. Please note that providing this reduced payment option does not affect or diminish your rights, including your right to dispute the validity of all or any portion of the debt and to request information about the original creditor.

19. Exhibit A also includes the following threat of referral to an attorney:

> Our client has identified your account as eligible for referral to its attorney network in your state for review for possible legal action. Please note that no decision has been made as to whether legal action will be taken. That decision can be made only by an attorney, and an attorney has not yet reviewed your account. Our role is to give you an opportunity to avoid the possibility of referral for legal review by our client, by establishing a repayment arrangement with you.

20. Exhibit A also contains the following statement:

```
Charge-Off Amount:              $3,794.65
Interest*:                          $0.00
Non-Interest Charges/Fees*:         $0.00
Payments Made*:                     $0.00
Balance:                        $3,794.65
*Amount listed accrued since charge-off
```

21. Exhibit A contains the following settlement offer:

3

> The amount of your debt is $3,794.65. At this time, we would like to offer to resolve your account for 30% off the balance! That's a total reduced payment amount of $2656.26. Upon receipt and clearance of your payment, we will immediately cease collection activity and will notify our client that you have paid your account.

22. <u>Exhibit A</u> also states:

> Please keep in mind, interest and fees are no longer being added to your account. That means every dollar you pay goes towards paying off your balance. We want to make this a positive experience and look forward to working with you.

23. Czarnecki was confused by <u>Exhibit A</u>.

24. The unsophisticated consumer would be confused by <u>Exhibit A</u>.

*Facts relating to Plaintiff Schneider*

25. On or about March 17, 2017, Alliance One mailed a debt collection letter to Plaintiff Schneider regarding an alleged debt, allegedly owed to "CAPITAL ONE BANK (USA), N.A." ("Capital One"). A copy of this letter is attached to this complaint as <u>Exhibit B</u>.

26. Upon information and belief, the alleged debt that Alliance One was attempting to collect was an alleged credit card account, used only for personal, family or household purposes.

27. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Schneider inserted by computer.

28. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter used by Alliance One to attempt to collect alleged debts.

29. Upon information and belief, <u>Exhibit B</u> is the first written communication that Alliance One sent to Schneider regarding the alleged debt to which <u>Exhibit B</u> refers.

30. <u>Exhibit B</u> contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

4

31. The above language in Exhibit B is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

32. Exhibit B also contains the following settlement offer:

> The amount of your debt is $1,136.66. At this time, we would like to offer to resolve your account for 40% off the balance! That's a total reduced payment amount of $682.00. Upon receipt and clearance of your payment, we will immediately cease collection activity and will notify our client that you have paid your account.
>
> Our goal is to offer payment solutions that fit your needs. If you can't pay the reduced amount within 40 days, please call 800-279-3480 to discuss other options including a variety of payment plans. Please note that providing this reduced payment option does not affect or diminish your rights, including your right to dispute the validity of all or any portion of the debt and to request information about the original creditor.

33. Exhibit B also includes the following threat of referral to an attorney:

> Our client has identified your account as eligible for referral to its attorney network in your state for review for possible legal action. Please note that no decision has been made as to whether legal action will be taken. That decision can be made only by an attorney, and an attorney has not yet reviewed your account. Our role is to give you an opportunity to avoid the possibility of referral for legal review by our client, by establishing a repayment arrangement with you.

34. Exhibit B gives absolutely no indication of when Defendant would turn Plaintiff's account over to an attorney. (Exhibit B).

35. Exhibit B also contains the following statement:

| | |
|---|---|
| Charge-Off Amount: | $1,136.66 |
| Interest*: | $0.00 |
| Non-Interest Charges/Fees*: | $0.00 |
| Payments Made*: | $0.00 |
| Balance: | $1,136.66 |

*Amount listed accrued since charge-off

36. Exhibit B contains the following settlement offer:

> The amount of your debt is $1,136.66. At this time, we would like to offer to resolve your account for 40% off the balance! That's a total reduced payment amount of $682.00. Upon receipt and clearance of your payment, we will immediately cease collection activity and will notify our client that you have paid your account.

37. Exhibit B also states:

5

> Please keep in mind, interest and fees are no longer being added to your account. That means every dollar you pay goes towards paying off your balance. We want to make this a positive experience and look forward to working with you.

38. Schneider was confused by Exhibit B.

39. The unsophisticated consumer would be confused by Exhibit B.

*Facts relating to Plaintiff Konings*

40. On or about May 15, 2017, Alliance One mailed a debt collection letter to Plaintiff Konings regarding an alleged debt, allegedly owed to "CAPITAL ONE BANK (USA), N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit C.

41. Upon information and belief, the alleged debt that Alliance One was attempting to collect was an alleged credit card account, used only for personal, family or household purposes.

42. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Schneider inserted by computer.

43. Upon information and belief, Exhibit C is a form debt collection letter used by Alliance One to attempt to collect alleged debts.

44. Upon information and belief, Exhibit C is the first written communication that Alliance One sent to Schneider regarding the alleged debt to which Exhibit C refers.

45. Exhibit C contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

46. The above language in Exhibit C is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

47. Exhibit C also contains the following settlement offer:

> The amount of your debt is $1,963.67. At this time, we would like to offer to resolve your account for 40% off the balance! That's a total reduced payment amount of $1178.20. Upon receipt and clearance of your payment, we will immediately cease collection activity and will notify our client that you have paid your account.
>
> Our goal is to offer payment solutions that fit your needs. If you can't pay the reduced amount within 40 days, please call 800-279-3480 to discuss other options including a variety of payment plans. Please note that providing this reduced payment option does not affect or diminish your rights, including your right to dispute the validity of all or any portion of the debt and to request information about the original creditor.

48. Exhibit C also includes the following threat of referral to an attorney:

> Our client has identified your account as eligible for referral to its attorney network in your state for review for possible legal action. Please note that no decision has been made as to whether legal action will be taken. That decision can be made only by an attorney, and an attorney has not yet reviewed your account. Our role is to give you an opportunity to avoid the possibility of referral for legal review by our client, by establishing a repayment arrangement with you.

49. Exhibit C gives absolutely no indication of when Defendant would turn Plaintiff's account over to an attorney.

50. Konings was confused by Exhibit C.

51. The unsophisticated consumer would be confused by Exhibit C.

### *Facts relating to Plaintiff Cajigas*

52. On or about April 24, 2017, Alliance One mailed a debt collection letter to Plaintiff Cajigas regarding an alleged debt, allegedly owed to "CAPITAL ONE BANK (USA), N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit D.

53. Upon information and belief, the alleged debt that Alliance One was attempting to collect was an alleged credit card account, used only for personal, family or household purposes.

54. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Schneider inserted by computer.

55. Upon information and belief, Exhibit D is a form debt collection letter used by Alliance One to attempt to collect alleged debts.

56. Upon information and belief, Exhibit D is the first written communication that Alliance One sent to Schneider regarding the alleged debt to which Exhibit D refers.

7

57. Exhibit D contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

58. The above language in Exhibit D is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

59. Exhibit D also contains the following settlement offer:

> The amount of your debt is $1,963.67. At this time, we would like to offer to resolve your account for 40% off the balance! That's a total reduced payment amount of $1178.20. Upon receipt and clearance of your payment, we will immediately cease collection activity and will notify our client that you have paid your account.
>
> Our goal is to offer payment solutions that fit your needs. If you can't pay the reduced amount within 40 days, please call 800-279-3480 to discuss other options including a variety of payment plans. Please note that providing this reduced payment option does not affect or diminish your rights, including your right to dispute the validity of all or any portion of the debt and to request information about the original creditor.

60. Cajigas was confused by Exhibit D.

61. The unsophisticated consumer would be confused by Exhibit D.

### ***The FDCPA***

62. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler &*

8

*Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

63. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

64. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

65. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

66. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

67. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## *FDCPA Violations*

### *The threat of legal action and settlement offer overshadow the validation notice.*

68. Exhibits A-D are confusing to the unsophisticated consumer because they demand a payment within the validation period or shortly thereafter, but do not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

69. Exhibits A-C compound the confusion and coercive nature of AllianceOne's conduct by also including a threat of legal action.

70. The unsophisticated consumer would have no idea how to both seek verification of the debt, preserve the settlement offer in Exhibits A-D, and, except for Exhibit D, avoid

having his or her account turned over to an attorney for possible legal action. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

71. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

72. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. He may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

73. Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

74. The validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

75. The effect of the settlement offer and threat of attorney referral in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

76. Defendant did not include sufficient explanatory language in Exhibits A-D, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997). Its apparent attempt to do so – "Please note that providing this reduced payment option does not affect or diminish your rights, including your right to dispute the validity of all or any portion of the debt and to request information about the original creditor," does not address or clarify the issue of whether the offer may or would expire if the consumer submits a dispute in writing.

77. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear whether a dispute will extend the settlement offer and/or temporarily suspend referral to an attorney while the debt collector is in the process of complying with its obligation to verify the debt.

78. Upon information and belief, if a consumer submits a dispute in writing, neither AllianceOne nor Capital One would actually refer the account to an attorney before providing verification. The consumer does not know this.

79. Moreover, the unsophisticated consumer would interpret the language in Exhibits A-C stating: "Our role is to give you an opportunity to avoid the possibility of referral for legal review by our client, by establishing a repayment arrangement with you," as meaning the only way to avoid referral to an attorney is to pay or establish a payment plan with AllianceOne.

80. In reality, Capital One directs letters with the above threat of legal action to many consumers who Capital One has no intention of suing. The unsophisticated consumer does not know this either.

### *False threats of interest, fees and non-interest charges*

81. <u>Exhibits A-D</u> also state that interest, non-interest charges and/or fees may be added to the alleged debt.

82. Although the amounts of interest, non-interest charges and/or fees in <u>Exhibits A-D</u> are $0.00, the letter implies that there could be interest or costs added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

83. Upon information and belief, AllianceOne does not actually add interest or fees to accounts such as those identified in <u>Exhibits A-D</u>.

84. Upon information and belief, AllianceOne includes the references to "interest" and non-interest/fees for the purpose of intimidating consumers to pay under threat of the balance increasing.

### *Confusion of the balance and settlement amounts*

85. <u>Exhibits A-D</u> also contain settlement offers that reference the balance due in a confusing manner.

86. <u>Exhibit B</u> contains the following settlement offer:

> The amount of your debt is $1,136.66. At this time, we would like to offer to resolve your account for 40% off the balance! That's a total reduced payment amount of $682.00. Upon receipt and clearance of your payment, we will immediately cease collection activity and will notify our client that you have paid your account.

87. <u>Exhibit B</u> also states:

> Please keep in mind, interest and fees are no longer being added to your account. That means every dollar you pay goes towards paying off your balance. We want to make this a positive experience and look forward to working with you.

88. The representation in <u>Exhibits A-D</u> that the payment option will "resolve" the account is false, misleading and confusing to the unsophisticated consumer.

13

89. The unsophisticated consumer would be confused and misled as to why AllianceOne provided an itemized breakdown of "interest and fees [that] are no longer being added to your account."

90. The unsophisticated consumer would wonder whether the itemized breakdown accurately stated the charges and fees that had accrued prior to Exhibits A-D being sent and whether Exhibits A-D accurately stated the balance and character of the debt.

91. The alleged debt is a credit card account. Upon information and belief, the debt will accrue interest, likely at a default or penalty rate between 20 and 30 percent or possibly more, between the respective dates listed on Exhibits A-D and the date Plaintiff would make a payment on the alleged debt.

92. The unsophisticated consumer understands that interest and fees are routinely added to delinquent (allegedly) credit card accounts, and would be confused as to whether the settlement option is meant to incorporate interest and fees into it, or not.

93. Exhibits A-D fail to state the terms of the settlement offers in a non-confusing manner.

94. The unsophisticated consumer could not determine from Exhibits A-D if the settlement offers are for an amount set as of the date of the letter, or an amount that will increase depending on when the unsophisticated consumer sends in the payment.

95. The normal meaning of "settling" a debt means that the debt is permanently resolved in exchange for a payment of a portion of the balance.

96. The unsophisticated consumer could send a check for the settlement amount and would not know whether he had sent enough money to actually settle the account, due to the

14

possibility that Alliance One, on a whim, added interest or other charges to the settlement amount.

97. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). But the payment specified may be insufficient to settle the whole debt, plus undisclosed interest and fees. Due to the continuing accrual of interest on the alleged credit card debt, it is possible that Alliance One and Capital One could continue to collect the entire remaining balance of the alleged debt and additional accrued interest, as a settlement agreement has not actually been consummated.

## COUNT I – FDCPA

98. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

99. The settlement offer deadlines and threats of referral to an attorney for possible legal action conflict with and overshadow the debt validation notice, in that they demand a payment within the validation period or shortly thereafter while identifying a consequence of non-payment, but do not explain how the validation notice, settlement offer, and threat of legal action fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

100. Exhibits A-D are confusing, deceptive, and/or misleading to the unsophisticated consumer.

101. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

102. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## COUNT II -- FDCPA

103. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

104. Exhibits A-D threaten to collect interest and fees that neither AllianceOne nor Capital One intends to actually collect from Plaintiffs.

105. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

## COUNT III – FDCPA

106. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

107. The settlement offers in Exhibits A-D are confusing. Exhibits A-D fail to specify whether the settlement offer is for a set, pre-determined amount or it is subject to other charges.

108. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

## CLASS ALLEGATIONS

109. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibits A-D to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 16, 2017 and January 16, 2018, inclusive, (e) that was not returned by the postal service.

110. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

111. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. § 1692e, 1692e(10), 1692f and 1692g.

112. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

113. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

114. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

115. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 16, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)

17

Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com